**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17-36427 |
| David Allen Wigdahl, | ) | Chapter 11 |
|     Debtor. | ) | Judge A. Benjamin Goldgar |
| | ) | |
| ------------------------------------------------------------- | ) | |
| | ) | |
| Wigdahl Electric Company, | ) | Adversary No._____ |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| David Allen Wigdahl, | ) | |
|     Defendant. | ) | |

**COMPLAINT OF WIGDAHL ELECTRIC COMPANY OBJECTING TO DISCHARGEABILITY OF CERTAIN DEBTS PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE**

NOW COMES Plaintiff, Wigdahl Electric Company, by and through its counsel, Matthew T. Gensburg and E. Philip Groben, and hereby brings this Complaint Objecting to the Dischargeability of Certain Debts Pursuant to Section 523(a)(2), (4) and (6) of the Bankruptcy Code against Defendant David Allen Wigdahl, and pleads as follows:

**SUMMARY OF THE CASE**

1. David Allen Wigdahl served as president of Wigdahl Electric Company for approximately sixteen years; from 2000 to 2016. During this time, and as described in more detail below, David Allen Wigdahl used his authority as president of the Wigdahl Electric Company to embezzle more than $4.3 million dollars in cash from the company, defrauded Wigdahl Electric Company in an amount of approximately $1.1 million through the use of ghost employees, used the corporate credit cards to fuel his extravagant lifestyle and, without

1

authorization or an intent to repay, secretly borrowed from Wigdahl Electric Company additional funds in excess of $2 million.

2. The actions of David Allen Wigdahl (i) were part of a scheme to obtain money, property and services from Wigdahl Electric Company through false pretenses, false representations, or actual fraud, (ii) represent acts of fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and (iii) caused willful and malicious financial injury to Wigdahl Electric Company. Wigdahl Electric Company asks this Court to render obligations owed to it by David Allen Wigdahl nondischargeable pursuant to Sections 523(a)(2), (4), and (6) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The Bankruptcy Court for the Northern District of Illinois ("**Bankruptcy Court**") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Internal Operating Procedure 15(a) of the United States District Court for the northern District of Illinois.

4. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5. Venue of the underlying bankruptcy case and of this adversary proceeding is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This matter is being brought as an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(1) to determine dischargeability under Sections 523(a)(2), 523(a)(4) and 523(a)(6) of the Bankruptcy Code.

7. Wigdahl Electric Company consents to the jurisdiction of the Bankruptcy Court to liquidate its claims against David Allen Wigdahl.

## PARTIES

8. David Allen Wigdahl ("**Debtor**" or "**Defendant**") is the debtor and debtor-in-possession in this underlying bankruptcy case, Case No. 17-36427.

9. Wigdahl Electric Company ("**Wigdahl Electric**" or "**Plaintiff**") is a corporation organized in the State of Illinois, whose principal place of business is located at 1802 Brummel Avenue, Elk Grove Village, Illinois.

## FACTS COMMON TO ALL COUNTS

10. On December 7, 2017, (the "**Petition Date**") the Debtor filed a voluntary petition for relief under Chapter 11 of Title of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"), thereby commencing the above-captioned bankruptcy case.

11. On March 5, 2018, Wigdahl Electric filed its MOTION TO EXTEND TIME TO OBJECT DISCHARGE AND DISCHARGEABILITY. [Docket No. 42]. In an Order dated March 12, 2018, the Bankruptcy Court extended the deadline by which Plaintiff could bring a complaint objecting to the Debtor's discharge or the dischargeability of certain debts to May 11, 2018. [Docket No. 47]

12. On May 11, 2018, Wigdahl Electric filed its SECOND MOTION TO EXTEND TIME TO OBJECT DISCHARGE AND DISCHARGEABILITY. [Docket No. 71]. In an Order dated May 23, 2018, the Bankruptcy Court extended the deadline by which Plaintiff could bring a complaint objecting to the Debtor's discharge or the dischargeability of certain debts to June 11, 2018. [Docket No. 74] .

13. The Defendant was an employee of Wigdahl Electric at various positions and with various titles for approximately thirty-six years. For the last sixteen (16) of those years, from 2000 until his termination from Wigdahl Electric on April 7, 2016, the Defendant was employed as Wigdahl Electric's president. During this period the Defendant had control over Wigdahl Electric's finances, bank accounts, and books and records.

14. As an employee of Wigdahl Electric, the Defendant drew a salary and received the benefits shared by all Wigdahl Electric employees, such as access to an employer-sponsored healthcare program, employer-provided life insurance, and retirement programs.

15. During the Defendant's tenure as president of Wigdahl Electric, the Defendant was responsible for managing Wigdahl Electric's personnel, supervising Wigdahl Electric's bank accounts and finances, and overseeing Wigdahl Electric's day-to-day operations and otherwise assumed complete control of Wigdahl Electric's financial affairs.

### A. The Defendant Paid Himself Excess and Unauthorized Compensation

16. After Wigdahl Electric terminated the Defendant's employment, it discovered that while acting as president of Wigdahl Electric, the Defendant paid himself excessive and unauthorized compensation in the form of base salary, bonus, and other benefits.

17. The Defendant paid himself this excess compensation, in part, by forging or otherwise executing corporate governance documents including, but not limited to, minutes of meetings of Wigdahl Electric board of directors and Wigdahl Electric corporate resolutions, without informed consent.

18. The Defendant's illicitly claimed compensation is further reflected in differences between his claimed salary and amounts reflected in annual W-2 tax documentation.

19.     For the tax year ending December 31, 2011, the Defendant had a purported salary of $572,397.98 but income set forth in his W-2 for that year of $1,404,923.13; a difference of $832,615,45.

20.     For the tax year ending December 31, 2012, the Defendant had a purported salary of $1,000,000.04 but income set forth in his W-2 for that year of $3,126,923.59; a difference of $2,126,923.55.

21.     For the tax year ending December 31, 2013, the Defendant had a purported salary of $1,000,000.04 but income set forth in his W-2 for that year of $3,849,847.07; a difference of $2,849,847.03.

22.     For the tax year ending December 31, 2014, the Defendant had a purported salary of $911,538.59 but income set forth in his W-2 for that year of $4,535,619.44; a difference of $3,624,080.85.

23.     For the tax year ending December 31, 2015, the Defendant had a purported salary of $653,846.35 but income set forth in his W-2 for that year of $1,611,926.34; a difference of $958,079.99.

24.     Wigdahl Electric discovered that on or about January 30, 2014 the Defendant paid himself a bonus of $1,000,000.00, on or about December 30, 2014 the Defendant paid himself a bonus of $800,000.00, and on or about January 30, 2015 the Defendant paid himself another bonus of $800,000.00, all without corporate authority.

25.     At no point in time did the Defendant have the authority to set his own compensation levels or bonuses, and the compensation levels and bonuses referenced herein were never approved by Wigdahl Electric.

26.     At all times relevant herein Wigdahl Electric never authorized the Defendant to draw an annual salary in excess of $200,000.00.

27.     Upon information and belief, the list of compensation discrepancies set forth above is not exhaustive, and other instances of Defendant's misappropriation of Wigdahl Electric funds disguised as salary or bonus compensation, all of which have been concealed from Wigdahl Electric, will be discovered through forensic accounting.

**B.     The Defendant Orchestrated Unauthorized Transfers of Funds from Wigdahl Electric**

28.     At all relevant points in time, Wigdahl Electric maintained a checking account with BMO Harris Bank N.A. ("**BMO Harris**") identified by account number xxxx4020 (the "**Wigdahl BMO Account**").  As president of Wigdahl Electric, the Defendant was a signatory to the Wigdahl Account.

29.     At all relevant points in time, the Defendant maintained a personal checking or savings account with BMO Harris identified by account number xxxx3991 (the "**Personal BMO Account**").

30.     Without the knowledge or consent of Wigdahl Electric, and over and above his salary and benefits, from March 21, 2013, through December 27, 2015, the Defendant secretly caused $1,698,039.46 in Wigdahl Electric's funds to be transferred from the Wigdahl BMO Account to his Personal BMO Account.  A schedule of direct transfers from the Wigdahl BMO Account to his Personal BMO Account is attached hereto as **Exhibit A**.

31.     Upon information and belief, Exhibit A is not an exhaustive list of transfers Defendant made from the Wigdahl BMO Account to his Personal BMO Account, and Defendant made additional such transfers prior to, and after, March 21, 2013.  The full extent of the illicit

transfers have been concealed from Wigdahl Electric and shall be discovered through forensic accounting.

32. Without the knowledge or consent of Wigdahl Electric, and in addition to the transfers disclosed in Exhibit A, the Defendant also wrote checks from the Wigdahl BMO Account payable to the Defendant personally.

33. The transfers Defendant caused to be made from the Wigdahl BMO Account to his Personal BMO Account, including those set forth in Exhibit A and by check, shall be collectively referred to as the "**BMO Transfers**".

34. Upon information and belief, the BMO Transfers were made by the Defendant to pay for personal living expenses associated with his lavish life style, including, in part, the costs he incurred in the renovations to his 56-acre residence, commonly known as 9N655 Kendall Rd., Elgin, Illinois (the "**Elgin Farm**").

35. At all relevant points in time, the David A. Wigdahl Declaration of Trust dated October 30, 2006 (the "**David Trust**") was the legal owner of the Elgin Farm, and the Defendant was the sole beneficiary of the David Trust.

36. At no point in time did the Defendant have the authority, nor was he permitted to direct BMO Harris to transfer Wigdahl Electric's funds to his Personal BMO Account. At no point in time has Defendant reimbursed Wigdahl Electric for the BMO Transfers. Further, there was no legitimate business purpose for the BMO Transfers, and the funds were diverted for the sole benefit of the Defendant.

37. Each time BMO Harris completed a transfer of funds from the Wigdahl BMO Account to the Personal BMO Account an email was sent to Linda Hall, a subordinate employee

of Wigdahl Electric, who was either unaware of the unauthorized nature of these transfers or was an accomplice with the Defendant.

38. No other employee of Wigdahl Electric, Wigdahl Electric board member, or Wigdahl Electric shareholder was aware of the BMO Transfers until after the termination of Defendant's employment with Wigdahl Electric.

    **C.    The Defendant's Unauthorized Use of Wigdahl Electric Credit Cards**

39. In the ordinary course of its business, credit cards were issued in the name of Wigdahl Electric, and Wigdahl Electric distributed those credit cards to its employees so that good and services used in Wigdahl Electric's business could be quickly purchased so as to minimize disruptions to Wigdahl Electric's operations.

40. As the account holder on the credit cards, Wigdahl Electric was responsible for the charges made by its employees, and Wigdahl Electric kept its unsecured lines of credit in good standing.

41. While acting as the president of Wigdahl Electric, the Defendant held multiple credit cards issued in the name of Wigdahl Electric, including cards with accounts ending xxxx5246, xxxx0842, xxxx3610, and xxxx4625. Credit cards issued in the name of Wigdahl Electric and used by the Defendant shall be referred to as the "**Corporate Cards**".

42. Without the knowledge or consent of Wigdahl Electric, the Defendant used the Corporate Cards to fuel a lifestyle beyond that which his salary would support.

43. The Defendant purchased personal goods and services with the Corporate Cards, including extravagant travel and hotels, expensive dinners, and shopping at retailers including Toys R Us, Ralph Lauren, and Mercedes-Benz.

44. The Defendant also used the Corporate Cards to issue cash advances to purchase additional goods and services for personal use.

45. In the year 2016, prior to his dismissal from Wigdahl Electric, the Defendant secretly and without authorization used the Corporate Ccards to purchase goods and services valued at $43,795.06 and took cash advances on the Corporate Cards in the amount of $21,436.45.

46. A summary of personal goods and services acquired by the Defendant, and cash advances taken by the Defendant in 2016, is attached hereto as **Exhibit B**.

47. Upon information and belief, Exhibit B is not an exhaustive list of the personal expenses or cash advances received by the Defendant, and Defendant made additional such transfers prior to 2016. The full extent of the illicit transfers have been concealed from Wigdahl Electric and shall be discovered through forensic accounting.

48. At no point in time did the Defendant have the authority to, nor was he permitted by Wigdahl Electric to use the Corporate Cards for his personal living expense, which was concealed from Wigdahl Electric while Defendant acted as the company's president. At no point in time has the Defendant reimbursed Wigdahl Electric for the personal charges made with the Corporate Cards. Further, there was no legitimate business purpose for the credit card charges referenced herein, and the charges were incurred for the sole benefit of the Defendant.

**D.    The Defendant Took Money from Wigdahl Electric and Issued Promissory Notes payable to Wigdahl Electric**

49. On January 31, 2014, Defendant issued a promissory note in the amount of $1,105,047.00 to Wigdahl Electric.

50. On January 31, 2015, Defendant issued a promissory note in the amount of $1,105,047.00 to Wigdahl Electric. The two above-described promissory notes are collectively

referred to herein as the "**Promissory Notes**" and the Promissory Notes are attached hereto as **Exhibit C**.

51. Both Promissory Notes accrue interest at the rate of 2% per annum, purport to be secured by all assets of the Defendant, including Defendant's real estate, and are payable upon demand.

52. Upon information and belief, the Promissory Notes were an after the fact attempt by the Defendant to legitimize misappropriated Wigdahl Electric funds. Wigdahl Electric did not lend the Defendant $1,105,047.00 on or before January 31, 2014 and Wigdahl Electric did not lend the Defendant $1,105,047.00 on or before January 31, 2015.

53. Wigdahl Electric was not aware of the existence of the Promissory Notes until after terminating the Defendant's employment.

54. The Promissory Notes reflect sums David Wigdahl misappropriated from Wigdahl Electric without Wigdahl Electric's knowledge or permission.

55. The Defendant did not intend to repay Wigdahl Electric for the debts evidenced by the Promissory Notes, either when the Defendant misappropriated those funds from Wigdahl Electric or when the Promissory Notes were executed by the Defendant.

**E.    Defendant's Unauthorized Use of Wigdahl Electric Materials and Employees for Defendant's Personal Gain**

56. In addition to the Elgin Farm, the Defendant owns through a trust a 158 acre farm located in Aiken South Carolina, which includes a home and several barns (the "**Aiken Farm**").

57. During the period of 2008 through 2014 the Defendant caused Wigdahl Electric to incur costs related to the maintenance of the Aiken Farm. Similarly, during the period of 2008 through 2016 the Defendant caused Wigdahl Electric to incur costs related to the maintenance of the Elgin Farm.

58. The costs incurred by Wigdahl Electric included costs in the form of "Ghost Employees," that is individuals who the Defendant had on Wigdahl Electric payroll, but who worked solely for the Defendant in maintaining and performing services at both the Elgin and Aiken Farms.

59. The persons employed by the Defendant to work on the Elgin and Aiken Farms included, in part, Anthony Sanders, Oscar Amezquita, Humphrey Rodriguez Jr., Jose Mireles, Donald Shealy, Horacio Onetto, Isidro Gonzalez, Evarista Mercado, and Pedro Sanchez.

60. At no time did the Ghost Employees perform any work on behalf of, or for the benefit of, Wigdahl Electric. Rather, the Defendant hired Ghost Employees to perform a number of different services or roles for the sole benefit of Defendant, with the Ghost Employees acting as Defendant's personal maintenance men, grounds keepers, housekeepers, cooks, nanny, groom, and professional polo player.

61. The Defendant also caused Wigdahl Electric to acquire goods and equipment used in the maintenance of both the Elgin and Aiken Farms.

62. On information and belief, the Defendant caused Wigdahl Electric to provide goods and employee services for the maintenance of the Aiken Farm with a total value of $62,822.18.

63. On information and belief, the Defendant caused Wigdahl Electric to provide goods and employee services for the maintenance of the Elgin Farm with a total value of $926,965.21.

64. Wigdahl Electric did not authorize Defendant to incur costs or expenses in the name of Wigdahl Electric related to the Aiken Farm, nor did the Defendant have authority to hire the Ghost Employees in the name of Wigdahl Electric to work on the Aiken Farm.

65. Wigdahl Electric did not authorize Defendant to incur costs or expenses in the name of Wigdahl Electric related to the Elgin Farm, nor did the Defendant have authority to hire the Ghost Employees in the name of Wigdahl Electric to work on the Elgin Farm.

66. A record of expenses and employee services attributable to Ghost Employees is attached hereto as **Exhibit D**.

67. Upon information and belief Exhibit D is not an exhaustive list of the expenses and employee services attributable to Ghost Employees. The full extent of the illicit expenses and employee services have been concealed from Wigdahl Electric and shall be discovered through forensic accounting.

68. Defendant did not repay Wigdahl Electric for the expenses and employee services associated with the Aiken Farm, nor did the Defendant repay Wigdahl Electric for the expenses and employee services associated with the Elgin Farm.

69. The Defendant's fraudulent activity and misappropriation of Wigdahl Electric money property caused Wigdahl Electric to be unable to meet certain obligations owed to the Internal Revenue Service, resulting in a federal tax lien being filed by the Service against Wigdahl Electric on May 4, 2017.

70. The Defendant's fraudulent activity and misappropriation of Wigdahl Electric money property caused an Event of Default to occur between Wigdahl Electric and its senior secured lender, BMO Harris (the "BMO Default"). Due to the BMO Default, Wigdahl Electric has been in forbearance with its senior secured lender and has been

### COUNT I – NONDISCHARGEABILITY OF DEBTS UNDER SECTION 523(a)(2) FOR ACTUAL FRAUD, FALSE PRETENSES, OR FALSE REPRESENTATION

71. Wigdahl Electric restates the allegations found in Paragraphs 1 through 70 as though fully set forth herein.

72. While acting as president of Wigdahl Electric, the Defendant obtained money, property, and services from Wigdahl Electric.

73. The Defendant retained control, or was the beneficiary, of the property transferred from Wigdahl Electric and services provided, including the personal goods and services purchased through use of the Corporate Cards and improvements made to the Aiken and Elgin Farm through misappropriation of Wigdahl Electric property and employees.

74. The Defendant concealed the transfers he orchestrated from Wigdahl Electric.

75. The Defendant knew at the time he increased his compensation and paid himself bonus that that he had no authority to do so, and these transfers were not for Wigdahl Electric's benefit.

76. The Defendant knew at the time he requested BMO Harris to make the Transfers that he had no authority to request BMO Harris make the BMO Transfers, and the transfers were not for Wigdahl Electric's benefit.

77. The Defendant knew at the time he used the Corporate Cards to purchase personal goods and services that he had no authority to do so, and the use of the Corporate Cards were not for Wigdahl Electric's benefit.

78. The Defendant knew at the time he charged construction and maintenance costs and used Ghost Employees paid by Wigdahl Electric in relation to the Aiken Farm or Elgin Farm, that he had no authority to do so, and the Ghost Employees and the construction and maintenance costs for the Aiken and Elgin Farms were not for Wigdahl Electric's benefit.

79. The Defendant knew at the time he issued the Promissory Notes that he had no authority to misappropriate the funds reflected in the Promissory Notes, and the Defendant knew at the time he issued the Promissory Notes that he had no intent to repay Wigdahl Electric.

80. The Defendant requested the BMO Transfers be made, purchased personal goods and services with the Corporate Cards, charged construction and maintenance costs and used Ghost Employees paid by Wigdahl Electric in relation to the Aiken Farm or Elgin Farm, and borrowed $2,210,094 from Wigdahl Electric with no intent to repay Wigdahl Electric with the intent of deceiving Wigdahl Electric.

81. Wigdahl Electric sustained damage as a result of the increased compensation and payment of bonuses to himself, the BMO Transfers, the purchase of personal goods and services with the Corporate Cards, the construction and maintenance costs and use of Ghost Employees in relation to the Aiken Farm or Elgin Farm, and the borrowed $2,210,094 from Wigdahl Electric with no intent to repay Wigdahl Electric.

82. The Defendant was under a duty to disclose the increased compensation and payment of bonuses to himself, the BMO Transfers the purchase of personal goods and services with the Corporate Cards, the construction and maintenance costs and use of Ghost Employees in relation to the Aiken Farm or Elgin Farm, and the borrowed $2,210,094 from Wigdahl Electric with no intent to repay Wigdahl Electric, and the Defendant's failure to inform Wigdahl Electric as to any of those matters was a fraudulent omission.

83. The Defendant's increased compensation and payment of bonuses to himself was part of a scheme to obtain money, services, and property of Wigdahl Electric through false pretenses, false representation, or actual fraud.

84. The Defendant's orchestration of the transfer of funds from the Wigdahl BMO Account to the Defendant's BMO Account was part of a scheme to obtain money, services, and property of Wigdahl Electric through false pretenses, false representation, or actual fraud.

85. The Defendant's use of the Corporate Cards to purchase personal goods and services was part of a scheme to obtain property of Wigdahl Electric through false pretenses, false representation, or actual fraud.

86. The Defendant's charge of construction and maintenance costs and use of Ghost Employees paid by Wigdahl Electric in relation to the Aiken Farm or Elgin Farm was part of a scheme to obtain property of Wigdahl Electric through false pretenses, false representation, or actual fraud.

87. The Defendant, without authority or permission or intent to repay Wigdahl Electric, borrowing $2,210,094 from Wigdahl Electric was part of a scheme to obtain property of Wigdahl Electric through false pretenses, false representation, or actual fraud.

WHEREFORE, Wigdahl Electric Company asks this Court to enter a judgment in favor of Wigdahl Electric Company and against Defendant David Allen Wigdahl rendering the claims of Wigdahl Electric Company as illustrated above nondischargeable pursuant to Section 523(a)(2) of the United States Bankruptcy Code, and for such other and further relief as this Court may deem just and proper.

**COUNT II – NONDISCHARGEABILITY OF DEBT UNDER SECTION 523(a)(4)**

88. Wigdahl Electric restates the allegations found in Paragraphs 1 through 70 as though fully set forth herein.

89. Defendant, as the president of Wigdahl Electric was a fiduciary of Wigdahl Electric.

90. The Defendant misappropriated funds, property, or assets of Wigdahl or failed to properly account for funds, property, or assets of Wigdahl Electric.

91. The Defendant's increased compensation and payment of bonuses to himself was part of a scheme to obtain property of Wigdahl Electric through fraud or defalcation.

92. The Defendant's orchestration of the transfer of funds from the Wigdahl BMO Account to the Defendant's BMO Account was part of a scheme to obtain property of Wigdahl Electric through fraud or defalcation.

93. The Defendant's use of the Corporate Cards to purchase personal goods and services was part of a scheme to obtain property of Wigdahl Electric through fraud or defalcation.

94. The Defendant's charge of construction and maintenance costs to Wigdahl Electric, and use of Ghost Employees paid by Wigdahl Electric, in relation to the Aiken Farm or Elgin Farm was part of a scheme to obtain property of Wigdahl Electric through fraud or defalcation.

95. The Defendant, without authority or permission or intent to repay Wigdahl Electric, borrowing $2,210,094 from Wigdahl Electric was part of a scheme to obtain property of Wigdahl Electric through fraud or defalcation.

96. The Defendant, as the president of Wigdahl Electric, had a right to use the assets of Wigdahl Electric for the benefit of Wigdahl Electric and in furtherance of Wigdahl Electric's operations and business.

97. The Defendant's appropriation of the funds to increase his compensation and pay of bonuses to himself was for a use other than for which said property was entrusted to the Defendant.

98. The Defendant's appropriation of the funds at issue in the BMO Transfers, were for a use other than for which said property was entrusted to the Defendant.

99. The Defendant's appropriation of materials owned or purchased by Wigdahl Electric and used for the construction or maintenance of the Aiken Farm or Elgin Farm, were for a use other than for which said property was entrusted to the Defendant.

100. The Defendant's appropriation of personal goods and services obtained through use of the Corporate Cards were for a use other than for which said property was entrusted to the Defendant.

101. The Defendant's appropriation of the funds taken from Wigdahl Electric as evidenced by the Promissory Notes were for a use other than for which said property was entrusted to the Defendant.

102. In the alternative, the Defendant did not have right to, or ownership interest in, the funds he paid himself through increased compensation and bonuses, the BMO Transfers, materials owned or purchased by Wigdahl Electric and used for the construction or maintenance of the Aiken Farm or Elgin Farm, funds Wigdahl Electric used to employ Ghost Employees hired by the Defendant for the construction or maintenance of the Aiken Farm or Elgin Farm, personal goods and services obtained through use of the Corporate Cards, or the funds taken from Wigdahl Electric as evidenced by the Promissory Notes, and the Defendant came into possession of said property wrongfully.

WHEREFORE, Wigdahl Electric Company asks this Court to enter a judgment in favor of Wigdahl Electric Company and against Defendant David Allen Wigdahl rendering the claims of Wigdahl Electric Company as illustrated above nondischargeable pursuant to Section 523(a)(4) of the United States Bankruptcy Code, and for such other and further relief as this Court may deem just and proper.

## COUNT III – NONDISCHARGEABILITY OF DEBT UNDER SECTION 523(a)(6)

103. Wigdahl Electric restates the allegations found in Paragraphs 1 through 70 as though fully set forth herein.

104. The Defendant intended to inflict injury upon Wigdahl Electric, or injury was substantially certain to occur as a result of the Defendant's conduct.

105. The conduct of Defendant in increasing his compensation and paying bonuses to himself, orchestrating the BMO Transfers, misappropriating materials owned or purchased by Wigdahl Electric and used for the construction or maintenance of the Aiken Farm or Elgin Farm, causing Wigdahl Electric to employ Ghost Employees for the construction or maintenance of the Aiken Farm or Elgin Farm, obtaining personal goods and services through use of the Corporate Cards, or taking funds from Wigdahl Electric as evidenced by the Promissory Notes was done without just cause or excuse.

106. The Defendant willfully and maliciously injured Wigdahl Electric through the increased compensation and payment of bonuses to himself.

107. The Defendant willfully and maliciously injured Wigdahl Electric through the orchestrated transfer of funds from the Wigdahl BMO Account to the Defendant's BMO Account.

108. The Defendant willfully and maliciously injured Wigdahl Electric through the use of the Corporate Cards to purchase personal goods and services and obtain cash advances.

109. The Defendant willfully and maliciously injured Wigdahl Electric through the charge of construction and maintenance costs, and use of Ghost Employees paid by Wigdahl Electric, in relation to Aiken Farm.

110. The Defendant willfully and maliciously injured Wigdahl Electric through the charge of construction and maintenance costs, and use of Ghost Employees paid by Wigdahl Electric, in relation to Elgin Farm.

111. The Defendant willfully and maliciously injured Wigdahl Electric through the borrowing of $2,210,094 from Wigdahl Electric with no intent to repay Wigdahl Electric.

WHEREFORE, Wigdahl Electric Company asks this Court to enter a judgment in favor of Wigdahl Electric Company and against Defendant David Allen Wigdahl rendering the claims of Wigdahl Electric Company as illustrated above nondischargeable pursuant to Section 523(a)(6) of the United States Bankruptcy Code, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted,
Wigdahl Electric Company

BY: /s/ Matthew T. Gensburg
One of its attorneys

Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Gensburg Calandriello & Kanter, P.C.
200 W. Adams St., Ste. 2425
Chicago, IL 60606
Phone: (312) 263-2200
Fax: (312) 368-2242